7-1-6-6-6, R. Alexander Acosta v. Local Union 26, Unite Here I see my time is almost up, so I will reserve the remainder for my rebuttal. May it please the Court, Richard McCracken for Local 26. In the real world, what is this about? Your Honor, we've had three cases under Section 104 since the passage of the law nearly 70 years ago. I think that shows, 60 years ago, that shows how unimportant this provision of the law actually is in the real world. It doesn't necessarily show that at all, because we don't know what union practice has been in the wide spectrum of unions. For all we know, this is all being done consensually and without a problem by many unions. We don't know that at all. And some unions, as the briefs point out, post their agreements online. So from a real world perspective, this woman wants to go in and take some notes, maybe even copious notes, but I'm trying to figure out what's the problem with that. Your Honor, the regular practice, I'm sure, is that the unions forward copies of their collective bargaining agreements upon request, which is what the statute says, not automatically, to all the members whose rights are affected. Well, how do we know that? I mean, your union resisted doing that in this case. It had to be ordered by the district court to do it. Your Honor, the first parts of Section 104 require a union to forward to a member or an employee, upon request, a copy of the collective bargaining agreement covering that employee. That is something that Local 26 did for this employee. Even though she requested 37 agreements, she was given one, a whole copy, of the agreement that covered her. That is its standards practice. I believe it must be the standard practice of all unions, because there's been no litigation at all, after the Brewer case, about the question of getting copies of the agreements covering the specific employees. Turning to Judge Thompson's question, almost all unions do not post their collective bargaining agreements online, or give copies of collective bargaining agreements to employees not covered by them. The Secretary has found, out of 57 local unions in UNITE HERE International Union, which is the Hotel Employees Union, out of 57 unions, it has found four or five that post their agreements online, including one that has only one agreement that it doesn't negotiate, which is Local 43 in Chicago, which is the Amtrak local of UNITE HERE. The other locals are ones at Disney World. Disney World is their one employer, so they don't have that many contracts to post. Local 26 has over 50 contracts. No other big locals in UNITE HERE post their contracts online, or provide contracts to employees who are not covered by them. They do, when requested, allow inspection of agreements, I presume. This is the only case that I know of, in many years of practice, I'm representing UNITE HERE, where any employee has requested to examine collective bargaining agreements not covering her. So I think in the real world, no one wants to do this. There's no good reason to do this. And with respect to reason, there is no evidence in this record about the purpose that the employee here, the member, Denise Goyga, wished to serve by her inspection. Why should there be? Well, that's a good question. I mean, the statute doesn't require that she set forth a purpose for inspecting. It doesn't. It doesn't, and we don't know why she inspected. My brother from the Department of Labor just said that her purpose had to do with collective bargaining negotiations, and we don't know that. That's something that was alluded to in the complaint, but was denied. We don't know what her purpose was. Today, we have no idea what her purpose was. Working with someone else? Well, if she's a union member, why wouldn't we just take her at a word that she's dissatisfied with the terms of her contract? She wants to take a look to see what kind of bargaining has gone on with other union members to see if she could encourage her bargaining team to perhaps negotiate stronger for something that the union has been able to achieve elsewhere. One response, Your Honor, is that the statute doesn't require it, but the better response is that we did. The local did say, come in and look at the agreements, but then the demand was to take notes, and the question was, well, how many notes? And the answer was, from the Department of Labor, as many notes as she likes, including making verbatim copies of the agreements under a statute that makes a clear distinction just in Section 104 itself between copy and inspect. So if this case had been just about inspection, that is, looking at the agreements, just as under Section 401C members are allowed to come in and look at the membership list but not copy it, make notes from it, if it had been just that, then we wouldn't be here. Because the union said, come and look. Don't make notes. In fact, it said, well, how many notes? And the response, again, was, well, as many notes as she wants, including verbatim copies. Then what is the difference between copy and inspect? Under the Department of Labor's position, there is no difference. The only difference is that if you are covered by the agreement, then the union will give you a copy that is made itself, presumably by printing. If you are a member, you can get a copy of another agreement, a copy of it, by making the copy yourself. So the difference becomes only one of semantics. The difference between a noun and a verb. If it's a contract that covers the member, then she gets a copy. If it's a contract that doesn't cover her, then she can make a copy. That's the Department of Labor's position. It completely effaces the distinction that Congress itself made in Section 104 between copy and inspect. And at the same time, and really at the very same time that Section 104 was being drafted and enacted, Section 401C about inspection and copying of membership lists was being proposed, worked on, and enacted simultaneously. And under Power Act and IDP v. Alvarez, that means that the two words inspect in Section 401C, inspect in Section 104, should be treated the same. They should be given the same universal assumption. I think that's a stretch, because you've got two titles that have very different purposes. Not to mention two provisions that have different purposes. But Section 104 is part, as I understand it, of the Employees Bill of Rights. And that Bill of Rights was put together and passed by Congress to accomplish one set of objectives. 401, which deals with union elections, put together for a completely different set of purposes and implicates, in terms of the content of what is being inspected, the privacy rights of the persons voting in elections. I don't think we can draw the reflexive comparison that you want us to draw. Your Honor, under Power Act and IDP, there's a presumption. There's a presumption if you have two statutes that are fairly part of the same legislation. That doesn't mean two disparate titles adopted for disparate purposes. Your Honor, they're all adopted at the same time as part of the same statute, separate titles. But as the Court points out in Crowley, the purposes of Title IV about union elections and Title I, especially the first part about the Bill of Rights, which is Section 101, actually overlap in their purposes. They are for the same purpose. They're for the purpose of promoting union democracy, especially through the election process. And in Crowley, the Court held that Title IV just gives exclusive responsibility to the Secretary of Labor in completing union elections. And everything having to do with union elections that occurs before the election is actually conducted falls within Title I, particularly Section 101, which is the Bill of Rights. Section 104 was not part of the Bill of Rights. As codified, it's not called the Bill of Rights. That's just Section 101. But in the legislative history, you see that actually the Bill of Rights, Section 101, was originated as an amendment proposed by Senator McClellan. And the legislative history shows that Section 104 was not part of that. Only what is now in Section 101 was part of the Bill of Rights, just as it has been codified. Section 104 had a completely separate history. So what's the evil? At what expense? She got copies of all of these agreements. What is the evil that will befall the union? First, Your Honor, the occupation of the union's space and time. Having someone in the office, and if she's going to make verbatim copies of 50 agreements or 40 agreements, it's going to take a very long time. Can't she snap a copy with a telephone today? Yes. Faster than we could have Xeroxed? She could do that. Yeah. She would have to monitor to make sure she didn't do that, because she's not allowed to actually make a copy. No, but the question I think that's pending now is, what is the fight about? And your answer was the burden on the union in having its space occupied. And it would seem with present portable copying devices that that's not much of an interest. Your Honor, we don't know what her purpose was. So what? Well, because these are not public documents. There are various cases I can describe to you. One is rival unions. Unions raid each other. And knowing what's in a contract other than your own could be used by someone else. But Congress has permitted her to know what's in the contract. The question is, how do you implement that right? She has a right to inspect the contracts so she knows what's in them. Does she have a right to make copies of them and then give those copies to other people? Give copies to rival unions who might raid this one? Give copies to employers who are trying to decertify the union or to resist unionization? Give copies of what's in these agreements to the Right to Work Foundation so it can make challenges to provisions about union security or about union organizing that are found in agreements? The problem here is not about inspecting agreements. The union agreed to let her do that. The problem is about her making unlimited verbatim copies of those agreements and thereby obtaining copies of agreements that she's not entitled to as opposed to inspection. Thank you. Thank you. Thank you, Your Honors. I would like to restrict my rebuttal to two points. The first is I believe Judge Thompson was asking my opposing counsel at the beginning of his presentation is what's the real fight here? And I think even throughout the union's briefing, they've not identified a single burden on the right to inspect or on the union itself from the union member taking notes. What's the burden with you promulgating some rules? I don't understand that either. You can talk to the folks over in the Department of Justice. All we hear on television these days is that the current administration is either eliminating or mostly eliminating rules and regulations. If this is just the opposite, you want a different rule, what's your burden? Absolutely, Judge Thompson. And I will again say that as an attorney at the Department of Justice, I can't make any representations on the particular availability of resources at the Department of Labor. All I can say is that the union here has only suggested that its space and time would be burdened. But that only underscores the extent to which its interpretation of the statute is at odds with Congress's goals in enacting it. Well, I think it claimed more than that. I think the claim was this may very well be significant in inter-union competition. Absolutely. I think that the union casts aspersions on the union member's motivations for inspecting the agreements in this case is, as the district court in Local 427 suggested, simply disheartening. They've identified no ulterior motive that she might have had for inspecting the agreements. And indeed, as we alleged in the complaint, she's merely wanted to propose new terms that would be favorable to her and her coworkers in the subsequent round of collective bargaining agreement negotiations. Were there any doubt that there is no burden on the union in this particular case? The union member and the union office had agreed to many different appointments over the course of several weeks, during which she would come to the office and inspect the agreements. There was no objection made to those appointments being made, or the union did not make any objection to those appointments. So now that my opposing counsel suggests that there would be a burden on space and time is simply not well taken. Second, I would like to point to Judge Sully's distinction of the different types of information that's subject to inspection under Sections 104 and 401C. First, there's a huge amount of information that's subject to inspection under Section 104. A union can enter into an infinite number of collective bargaining agreements while there's only a single membership list that would be subject to inspection. Second is the fact that Congress clearly intended to carefully circumscribe the right to inspect under Section 401C. Only a single inspection is available to a candidate for union office and only within 30 days of a union's election. There is no such limitation under Section 104. Indeed, as this union member attempted to do here, she sought inspection over the course of several weeks to be able to fully digest all of the contents of these agreements. For these reasons, I urge the court to reverse the district court's restrictive interpretation of the statute. Thank you.